IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:18-CV-00123-KDB-DCK

| | |
|---|---|
| JULIE WAGNER, <br><br>**Plaintiffs,** <br><br> v. <br><br> SIMPSON PERFORMANCE PRODUCTS, INC. AND TREVOR ASHLINE, <br><br> **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 26). The Court has carefully considered the motion and the parties' related briefs and exhibits. For the reasons stated below, the Court finds that Defendants' motion should be **DENIED**. With due regard for the applicable standard of review of a motion to dismiss pursuant to Rule 12(b)(6), the Court finds that accepting the Plaintiff's allegations as true and generously construing those facts in the light most favorable to the Plaintiff, Plaintiff has at this early stage of the case adequately pled that she could be found to be a co-inventor on U.S. Pat. No. 8,272,074 (the '074 Patent) and also adequately pled her state law claims. However, this order is entered without prejudice to Defendants having a comprehensive opportunity to seek summary judgment based on their various challenges to Plaintiff's claims after the record is more fully developed during discovery.

### I. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually

sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Ordinarily, a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, with respect to claims of fraud Rule 9(b) creates an exception to this liberal pleading standard and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017) (citing *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009)).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Julie Wagner, is a registered nurse and inventor who is interested in automotive safety. (First Amended Complaint, Doc. No. 25, hereafter "FAC," ¶¶ 4, 8). Beginning in 2001, Wagner developed and later patented a safety vest for children to protect them while they are in cars, which she called the Guardian Angel Vest (the "Vest"). (*Id*. ¶¶ 4, 8, 17). The Vest features epaulettes on the shoulders to maintain the shoulder portions of the seatbelt in the safest position relative to the clavicle in the event of a crash because of Wagner's belief that maintaining seatbelt placement over the shoulder is crucial for reducing injuries resulting from seatbelt displacement. *Id*. ¶¶ 18–19. (*Id*. ¶¶ 25, 28-30).

Defendant Trevor Ashline is an engineer with extensive expertise and experience in the field of safety restraints.[1] He is named as sole or joint inventor on at least ten U.S. patents, all related to vehicle safety equipment such as head and neck restraints. According to the FAC, Ashline is currently Vice President of Engineering and Product Development for Defendant Simpson Performance Products, Inc. ("Simpson"), a company that sells vehicle related safety equipment to, among others, NASCAR customers.

Wagner alleges that from 2003 to 2006, Wagner met and communicated with Ashline multiple times regarding her Vest and entered into an alleged "joint venture" with Ashline to sell the Vests and children's safety books. *Id.* ¶¶ 33-35. More specifically, Wagner alleges that in their meetings and conversations via email, Ms. Wagner allegedly "confidentially showed Ashline a prototype of her Guardian Angel vest having the epaulette feature and explained to him its function of reducing injury to a vehicle occupant by maintaining/guiding the over-the- shoulder portion of

---

[1] Both Wagner and Ashline are residents of Mooresville, North Carolina, where Defendant Simpson Performance Products, Inc. operates a place of business.

the seatbelt over/on top of the occupant's shoulder during a crash." *Id*. ¶ 25, *see also id*. ¶¶ 28–29, 41–42. Further, the FAC alleges: "At some point in 2005 Wagner, independent of Defendant Ashline, conceived of and conveyed to Ashline the idea of modifying the decorative epaulettes, commonly found on racing suits, to center the seatbelt over/on top of the shoulder." *Id*. ¶ 38.

In 2006 and 2007, Mr. Ashline filed U.S. Patent Applications Nos. 60/797,921 and 11/787,532. Those applications subsequently issued in September 2012 as the '074 Patent, which relates to a "Head Restraint Device Having a Support Member with Back and Shoulder Portions." *Id*. ¶¶ 43, 45. Simpson is the exclusive assignee of the '074 Patent. The '074 Patent states: "More specifically, the [invention] relates to a restraint device that controls movement of, and reduces forces applied to, a driver's head, neck and spine when the driver is subject to high deceleration forces, such as those forces that may occur during a collision event while operating a high-performance vehicle."

Wagner alleges that she contributed to the conception of at least one claim of the '074 Patent, *e.g.*, the claim language "a member having shoulder portions at least partially positionable on top of at least a portion the shoulders of the driver," which appears in Claim 1 of the '074 Patent. *Id*. ¶ 54. The FAC alleges that "Ashline had no knowledge of using shoulder portions over/on top of shoulders to maintain proper seatbelt position during crash impact until such concept was conveyed to him by Wagner." *Id*. ¶ 51. Accordingly, Wagner alleges that her insights and Vest "epaulettes" were the motivation for the "shoulder portions" which are claimed in the '074 Patent. *Id.* ¶ 53.

Wagner seeks an order naming her as a co-inventor of the '074 Patent pursuant to 35 U.S.C. § 256, and also alleges claims under North Carolina state law for unjust enrichment, fraud and imposition of a constructive trust. Defendants have moved to dismiss each of the counts of the

FAC. They argue that all of the counts fail to state a claim pursuant to Rule 12(b)(6) and further argue that Plaintiff's state law claims are preempted by federal patent law.

### III.    DISCUSSION

#### A. Inventorship of the '074 Patent

Section 256 of Title 35 of the United States Code "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). As relevant here, section 256 addresses "nonjoinder" – "the error of omitting an inventor" from a patent. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). "The determination of whether a person is a joint inventor is fact specific." *Fina Oil*, 123 F.3d at 1473.[2]

As explained in *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004), section 116 of Title 35 is the statutory locus of joint inventorship doctrine. It provides that a person not listed on a patent need not demonstrate that he made a contribution equal in importance to the contribution made by the listed inventors to claim his right to joint inventor status. *See* 35 U.S.C.

---

[2] As the case proceeds past the pleading stage, Plaintiff will have a high burden to maintain her claims. "[A] party alleging ... non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly*, 376 F.3d at 1358. A plaintiff's testimony regarding his or her own inventorship claim "is regarded with skepticism," *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993), and "cannot, standing alone, rise to the level of clear and convincing proof." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). Thus, a plaintiff "must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly*, 376 F.3d at 1358. "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may corroborate" a plaintiff's testimony. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005). Summary judgment may be granted where there is insufficient evidence to corroborate a plaintiff's claim of co-inventorship. *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1377-78 (Fed. Cir. 2006) (affirming summary judgment where trial court determined that plaintiff failed to present clear and convincing evidence of inventorship).

§ 116 (2000) ("Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent."). Also, section 116 "sets no explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor." *Fina Oil*, 123 F.3d at 1473.

However, because "'[c]onception is the touchstone of inventorship'... a joint inventor must contribute to the invention's conception." *Burroughs Wellcome Co. v. Barr Labs., Inc*., 40 F.3d 1223, 1227–28 (Fed.Cir.1994); *see also*, *Fina Oil*, 123 F.3d at 1473 ("[t]he case law thus indicates that to be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention."); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed.Cir.1994). A joint inventor must (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998).

There must also be "some quantum of collaboration" between the joint inventors. *Eli Lilly*, 376 F.3d at 1359 (noting that "the alleged joint inventor seeking to be listed on a patent must demonstrate that his labors were conjoined with the efforts of the named inventors"). "For persons to be joint inventors ... there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc*., 973 F.2d 911, 917 (Fed. Cir. 1992). "Individuals cannot be joint inventors if they are

completely ignorant of what each other has done until years after their individual independent efforts." *Id*.

Thus, joint inventorship occurs when more than one person contributes to the conception of the invention. Yet, it is frequently difficult to determine who has in fact contributed to the conception of a given invention because the contribution must consist of more than suggesting a desired result or following the instructions of another. Indeed, the concept of joint invention has been described by one court as "one of the muddiest concepts in the muddy metaphysics of the patent law." *Mueller Brass Co. v. Reading Indus.*, 352 F. Supp. 1357, 1372 (E.D. Pa. 1972), *aff'd,* 487 F.2d 1395 (3d Cir. 1973). Nevertheless, the Federal Circuit has stated that "[d]etermining 'inventorship' is nothing more than determining who conceived the subject matter at issue, whether that subject matter is recited in a claim in an application or in a count in an interference." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). "Thus, the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)."); *see also Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007).

Defendants argue that Plaintiff has failed to state a claim for joint inventorship because Plaintiff has not adequately alleged that she contributed to the conception of the head and neck restraint invention embodied in the '074 Patent or that she engaged in any labor toward the invention together with Ashline's efforts. More particularly, Defendants assert that Wagner has not alleged that she worked with Mr. Ashline on the actual invention covered in the '074 patent and thus has not sufficiently shown that she "contributed to the conception *of the invention* and engaged in "collaboration or concerted effort" *toward the invention*." Doc. 26-1 at 9 (italics in original). In other words, according to Defendants, even if the parties were working together on

the same subject matter – automobile safety restraints – the absence of an allegation that Wagner was expressly working with Ashline on his "head and neck restraint" invention dooms her claim to be a co-inventor.

The Court disagrees. Taking Wagner's allegations as true in the light most favorable to her,[3] she has alleged that over the course of several years she gave Ashline specific information and conceptual insights that he did not have and that he used as part of the conception of the '074 Patent. Thus, she has sufficiently alleged that she (1) contribute[d] in some significant manner to the conception or reduction to practice of the invention, (2) ma[de] a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) d[id] more than merely explain to the real inventors well-known concepts and/or the current state of the art.[4] *See Pannu*, 155 F.3d at 1351.

Further, the Court finds that Wagner has sufficiently alleged that she collaborated with Ashline on the relevant subject matter even if she was not directly involved with Ashline's separate "head and neck restraint" project. See *Kimberly-Clark Corp.*, 973 F.2d at 916 (Inventors need not work in the same place or at the same time but the inventors must "work on the same subject matter and make some contribution to the inventive thought and to the final result"). While the controlling authority clearly distinguishes between inventors truly working independently and those who collaborate, it would place form over substance and perhaps create a loophole for significant

---

[3] The Court notes that it is perhaps telling on the merits of Defendants' motion that the leading cases on joint inventorship, including the cases cited by both parties in support of their respective positions, do not arise in the context of a 12(b)(6) motion. Rather, they arise following trial or a motion for summary judgment.

[4] Defendants have argued that the concepts and inventions Wagner allegedly gave to Ashline were "well-known by the racing safety industry." As Defendants should be well aware, Defendants' contrary factual assertions are clearly beyond the scope of what the Court may properly consider in ruling on a 12(b)(6) motion. Of course, the parties will have an opportunity to develop a full record on this issue as the case moves forward.

mischief to allow a named inventor to deny a collaborating inventor her rights of joint inventorship simply because he can keep secret another project in which he uses a portion of the collaborative work with the second inventor. Again, the cases teach that so long as there is collaboration on a portion of the relevant subject matter – as has been clearly alleged here – the "critical question for joint conception is who conceived … the subject matter of the claims at issue." *See Ethicon,* 135 F.3d at 1460.

In sum, while the Court cannot predict whether Plaintiff will be able to sufficiently prove her alleged contribution to the conception of the claimed portion of the '074 Patent, she has plausibly alleged that contribution and the requisite collaboration and is entitled to move forward with her claim to joint inventorship.

### B. Unjust Enrichment

As a second claim, Wagner alleges that Ashline was unjustly enriched in violation of North Carolina common law in his assignment of the '074 Patent to Simpson because "Defendant Ashline was able to receive a greater share of the proceeds from the assignment … than if Plaintiff had not been precluded from her ownership of the '074 Patent at the time of the assignment." FAC, ¶80. Defendants assert two arguments against this claim. First, Defendants argue that the unjust enrichment claim fails because it is predicated on the success of the joint inventorship claim, which Defendants believe should be dismissed. However, as discussed above, the Court finds that Plaintiff has adequately stated a claim for joint inventorship; therefore, Plaintiff's unjust enrichment claim will not be dismissed because of its reliance on the merits of her joint inventorship claim.

Second, Defendants argue that Plaintiff's state law unjust enrichment claim should be dismissed because it is preempted by federal patent law, specifically 35 U.S.C. §§ 116, 256 and

262.[5]  The Supremacy Clause of the Constitution provides that federal law preempts contrary state laws. U.S. Const. art. VI, cl. 2. Federal preemption of state law can take a number of forms, known variously as explicit, field, and conflict preemption. Federal patent law does not explicitly preempt state unjust enrichment law nor has Congress evinced an intent to occupy exclusively the entire intellectual property field associated with inventions. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478–79 (1974). Thus, the issue in this case is conflict preemption. Conflict preemption arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as expressed in this case in the Patent Act. *Id*. at 479 (citations omitted).

"Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). The goals of Congress, expressed in federal patent law, are "[f]irst, patent law seeks to foster and reward invention; second, it promotes disclosure of inventions, to stimulate further innovation and to permit the public to practice the invention once the patent expires; third, the stringent requirements for patent protection seek to assure that ideas in the public domain remain there for the free use of the public." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)); *Ultra-Precision Mfg., Ltd.*, 411 F.3d at 1378. State laws that add additional elements not found in patent law causes of action and that "serve complementary, not conflicting, purposes" are not preempted by federal law. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 492 (1974); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed. Cir. 2003) (holding that unjust enrichment claims based on alleged wrongful use of confidential research results were not preempted by federal law).

---

[5] Defendants assert the same argument against Plaintiff's claim for imposition of a constructive trust, which Defendants argue is "properly denominated as a remedy for a claim of unjust enrichment." *See WJ Glob. LLC v. Farrell*, 941 F.Supp. 2d 688, 693 (E.D.N.C. 2013).

On the other hand, state laws that frustrate these objectives by providing "'patent-like protection' to intellectual property inconsistent with the federal scheme" are preempted and must be dismissed. *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1475 (Fed. Cir. 1998); *Ultra- Precision Mfg., Ltd.*, 411 F.3d at 1377 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) (holding that a state law prohibiting people from copying unpatentable boat hull designs was preempted because it sought to provide patent-like protection to boat designs not protectable by patent laws and it "contravenes the ultimate goal of public disclosure and use that is the centerpiece of federal patent policy")).

Applying this doctrine of conflict preemption, Federal preemption of causes arising under the Patent Act does not include matters of ownership or license as distinguished from inventorship. See *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) (holding that although an assignment and royalty agreement concerned patent property, that did not remove from the state courts the various disputes concerning property rights); *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261 (9th Cir. 1999) (alleged deprivation of patent ownership through various unlawful or unfair actions was not a claim under federal law); *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248-49, 26 USPQ2d 1572, 1582 (Fed. Cir. 1993) (inventorship and patent ownership are separate issues).

While Plaintiff's underlying rights as a co-inventor that support her claim for unjust enrichment are plainly subject to determination only under federal patent law, her claim for damages based on Defendants' alleged unjust enrichment as a result of failing to recognize her alleged ownership interest in the patent does not impermissibly conflict with patent law. Although patent law will govern whether Plaintiff has any property rights in the '074 Patent, once that is determined the enforcement of such rights under state law does not undermine federal law. On the

contrary, enforcing the full ownership rights of those who are found to have an interest in a patent would appear to complement and support rather than undermine the goal of providing robust patent rights to encourage invention and innovation.

Defendant argues that rather than enforcing her alleged ownership rights Plaintiff is attempting to receive a remedy for an alleged wrongful use of an idea that was in the public domain, thus conflicting with the goal of making ideas freely available (unless protected under the strict rules of patent law). *See Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003) ("[A]bsent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion of patent rights"). However, this argument both ignores Plaintiff's pleadings and the posture of this motion. Although they seek to minimize the allegations by calling them "buzzwords," Defendants acknowledge that Wagner repeatedly alleged that her communications with Ashline were "confidential" and that she shared her ideas with Mr. Ashline in confidence. *See* FAC ¶¶ 25, 28, 29, 77. Further, whether or not Wagner's alleged ideas were in the public domain cannot be properly determined in the context of this motion to dismiss. Therefore, in considering Defendants' 12(b)(6) motion, the Court declines to hold that Wagner's unjust enrichment claims[6] are preempted by federal patent law either as an effort to define her intellectual property rights (as distinguished from enforcing her alleged ownership rights) or to obtain a remedy for use of an idea in the public domain.

---

[6] Plaintiff has asserted an unjust enrichment claim against Simpson as well as Ashline. While an unjust enrichment claim directly against Simpson appears tenuous (in the absence of evidence that Simpson "consciously accepted a benefit" from Wagner, i.e., that Simpson knew of Wagner's alleged contribution to the '074 Patent), Plaintiff's allegations, generously construed with favorable inferences, are sufficient to allow the claim to initially proceed under theories of agency notice and potential successor in interest liability.

## C. Fraud

Plaintiff has asserted three separate claims for fraud: Fraud by Concealment; Fraud by Omission – Failure to Disclose the '532 Application; and Fraud by Omission – Misjoinder of Inventor. Under North Carolina law, the elements of a claim for fraud by concealment or omission are: (1) a concealment of a material fact; (2) made by a person with a duty to disclose the material fact; (3) reasonably calculated to deceive; (4) made with intent to deceive; (5) which does in fact deceive; and (6) results in damage to the injured party. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997); *see also Liner v. DiCresce*, 905 F. Supp. 280, 288 (M.D.N.C. 1994) (citing *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559 (1988)).

Defendants argue that Wagner has failed to adequately plead the "duty element," which they claim is crucial in the context of fraud by omission or concealment because "silence is fraudulent only when there is a duty to speak." *Breeden*, 171 F.R.D. at 194. To recover for fraud by omission or concealment, the complaint must allege the source of the duty and a "factual basis for supporting the imposition of such a duty." *Breeden*, 171 F.R.D. at 194. The duty to speak can come "from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances." *Marketel Media, Inc. v. Mediapotamus, Inc.*, No. 5:13-CV-427-D, 2015 WL 2401001, at *13 (E.D.N.C. May 19, 2015) (citing *Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 399 (1962) (quotation omitted)).

Defendants contend that Plaintiff has failed to allege facts sufficient to show that a fiduciary duty existed between Plaintiff and Ashline. In North Carolina "'[a] fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 671 (W.D.N.C. 2012) (citing *Branch Banking &*

*Tr. Co. v. Thompson*, 107 N.C. App. 53, 60–61 (1992)). Although, "[c]ontracting parties in a commercial transaction are not in a relationship of trust and confidence" and do not owe each other a fiduciary duty, *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013), fiduciary duties may arise by operation of law among business partners. *See Austin Maintenance & Construction, Inc. v. Crowder Construction Company*, 224 N.C. App. 401 (2012).

In *Austin Maintenance*, the Court explained the application of the existence of a fiduciary duty in the context of business partners and other business relationships as follows:

> "'[I]n North Carolina ... there are two types of fiduciary relationships: (1) those that arise from legal relations such as attorney and client, broker and client ... ***partners***, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'" *Ellison v. Alexander*, 207 N.C.App. 401, 408, 700 S.E.2d 102, 108 (2010) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners* 141, LLC, 189 N.C.App. 601, 613, 659 S.E.2d 442, 451 (2008) (internal citation omitted)).
>
> ***Business partners, for example, are each other's fiduciaries as a matter of law***. In less clearly defined situations the question whether a fiduciary relationship exists is more open and depends ultimately on the circumstances. Courts have historically declined to offer a rigid definition of a fiduciary relationship in order to allow imposition of fiduciary duties where justified. Thus, the relationship can arise in a variety of circumstances ... and may stem from varied and unpredictable factors.
>
> *HAJMM Co. v. House of Raeford Farms*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991) (citing *Casey v. Grantham*, 239 N.C. 121, 124–25, 79 S.E.2d 735, 738 (1954) (other citation omitted)).

*Id*. at 409. (emphasis added).

In this action, Plaintiff has specifically alleged that she and Ashline entered into a "joint venture" and that Ashline had a fiduciary duty of disclosure arising from that relationship. *See, e.g.*, FAC, ¶94. While Plaintiff has not specifically alleged that she and Ashline were "partners,"

Plaintiff's allegations of a "joint venture" together with her allegations of a resulting fiduciary relationship are sufficient to establish a plausible fiduciary duty under North Carolina law.[7] Defendants have not questioned the other elements of Plaintiff's fraud claims. Accordingly, the Court declines to dismiss Plaintiff's fraud claims pursuant to Rule 12(b)(6).[8,9]

### D. Constructive Trust

Plaintiff's final claim is for the imposition of a constructive trust. Defendants have not challenged this claim beyond their preemption challenge to Plaintiff's claims of unjust enrichment. Accordingly, the Court declines to dismiss this claim for the reasons discussed above with respect to Plaintiff's claims of unjust enrichment.

---

[7] Of course, the full scope and import of any proven partnership or other fiduciary relationship between Wagner and Ashline will need to be determined based on the facts developed by the parties in discovery.

[8] Defendants further argue that the "damage alleged in Plaintiff's fraud claims mirrors the damage alleged" in Plaintiff's unjust enrichment claim so it is preempted by federal patent law for the same reasons asserted in opposition to that claim. To the extent that the damages sought are truly the same (i.e. based on vindication of Plaintiff's ownership rights and the business arrangements among the parties) then the Court similarly finds the claims are not preempted by federal law. However, if as the case proceeds it becomes clear that Plaintiff's fraud claims seek to use state law to obtain protection beyond the bounds of patent law (which does not provide for the award of monetary damages to a co-inventor who is not named in a patent) then the Court will reconsider the issue of preemption with respect to these claims.

[9] Defendants also assert that Plaintiff's fraud claims are barred by the applicable three year statute of limitations. *See* N.C. Gen. Stat. § 1–52 (9) (2015). For claims of fraud, "the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477 (2004) (quoting *Calhoun v. Calhoun*, 18 N.C. App. 429, 432 (1973)). Plaintiff contends that factual issues exist as to when she should be held to have discovered the alleged fraud so the Court should not rule on this issue at this time. The Court agrees and will defer consideration of Defendants' challenge to Plaintiff's fraud claims based on the statute of limitations until the record is more fully developed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 26) is **DENIED** without prejudice to Defendants' opportunity to raise their asserted defenses and legal arguments later in the proceedings in this matter.

**SO ORDERED ADJUDGED AND DECREED**

Signed: January 9, 2020

Kenneth D. Bell
United States District Judge