IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:18-CV-00123-KDB-DCK

| | |
|---|---|
| JULIE WAGNER,<br><br>      Plaintiff,<br><br>      v.<br><br>SIMPSON PERFORMANCE<br>PRODUCTS, INC.<br>TREVOR ASHLINE,<br><br>      Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendants Simpson Performance Products, Inc. ("Simpson") and Trevor Ashline's Motion for Summary Judgment (Doc. No. 51) and Plaintiff Julie Wagner's motion for leave to depose Defendants' patent prosecution counsel Gregory Everman or alternatively partially strike his affidavit (Doc. No. 89). The Court has carefully considered these motions, the parties' briefs and exhibits and oral argument on the motions from the parties' counsel on February 4, 2021. As the Court noted in ruling on Defendants' motion to dismiss (Doc. No. 34), Plaintiff has the burden of establishing clear and convincing evidence to support her claim that she is a co-inventor of the patented invention at issue. Beyond her own testimony – which as a matter of law cannot, standing alone, rise to the level of clear and convincing proof – Plaintiff has presented insufficient evidence to corroborate her claim of co-inventorship. Therefore, the Court will **GRANT** Defendants' motion for summary judgment and deny Plaintiff's motion related to Mr. Everman as moot.

1

## I. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *See Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020); *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015)

(quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff, Julie Wagner, is a registered nurse and inventor who is interested in automotive safety. Beginning in 2001, Wagner developed and later patented along with co-inventor Charles F. Foley a children's safety vest, which she called the Guardian Angel Vest (the "Vest"), and which issued as U.S. Pat. No. 7,703,150 (the '150 Patent). *See* Doc. No. 51-4. The Vest is made out of a fabric material called duck cloth and is intended for children to wear to protect them while riding in a car, particularly on a booster seat. The Vest features Velcro flaps (so-called "epaulettes") on the shoulders, which Wagner contends maintains the shoulder portions of the seatbelt in the safest

3

position relative to the clavicle in the event of a crash. The Vest does not attach or connect to a helmet or the wearer's head and is therefore not a head and neck restraint, as that term is commonly understood in the automotive safety industry. Wagner has unsuccessfully tried to market the Vest for 14 years.

Defendant Trevor Ashline graduated from the Rochester Institute of Technology in 1991 with a Bachelor of Science Degree in Mechanical Engineering. Since graduation from college, he has worked continuously as an engineer, mostly in the field of seat belts and other automotive restraints. From 2000-2001, Ashline served as Lead Engineer for Autoliv's NASCAR Safety Program, and he was also involved in the investigation of Dale Earnhardt's death. Ashline is the named inventor on eleven U.S. patents related to automotive safety devices, of which nine are directed to head and neck restraints. Ashline began developing his own head and neck restraint devices in 2000 and marketed those products through companies that he formed – Safety Solutions, Inc. and/or LFT Technologies, Inc. (collectively "Safety Solutions"). He served as the CEO and sole owner of Safety Solutions until December 2010 when its assets were sold to Simpson, a company that sells vehicle related safety equipment to, among others, NASCAR customers. Ashline is currently employed as Simpson's Vice President of Engineering and Product Development. Wagner, Ashline and Simpson all reside or are located in Mooresville, North Carolina.

From 2003 to 2006, Wagner met and communicated with Ashline multiple times seeking his advice regarding her Vest, the related Vest patent and a line of children's safety books. She alleges that in their meetings and conversations she confidentially showed Ashline a prototype of her Guardian Angel vest having the "epaulette" feature and explained to him its function of reducing injury to a vehicle occupant by maintaining/guiding the over-the-shoulder portion of the

4

seatbelt over/on top of the occupant's shoulder during a crash. She also gave him a copy of her then-unpublished patent application to read. Wagner further says that at some point in 2005 she conceived of and conveyed to Ashline the idea of modifying the decorative epaulettes commonly found on racing suits to center the seatbelt over/on top of the shoulder.

In 2006 and 2007, Mr. Ashline filed U.S. Patent Applications Nos. 60/797,921 and 11/787,532 for a "head and neck restraint" to be used by automotive racing drivers. Those applications subsequently issued in September 2012 as U.S. Patent No. 8,272,074 (the '074 Patent), which relates to a "Head Restraint Device Having a Support Member with Back and Shoulder Portions." *See* Doc. No. 1-1. Simpson is the exclusive assignee of the '074 Patent. The '074 Patent states: "More specifically, the [invention] relates to a restraint device that controls movement of, and reduces forces applied to, a driver's head, neck and spine when the driver is subject to high deceleration forces, such as those forces that may occur during a collision event while operating a high-performance vehicle." *Id*.

No later than 2010, Wagner became aware of Ashline's patent applications for a head and neck restraint invention that later became the '074 Patent and engaged attorney Nicholas Tuccillo to represent her with respect to her concerns about those applications. On August 12, 2010, Mr. Tuccillo, who is a named partner of the law firm that represents Plaintiff in this action, wrote to Ashline's patent prosecution attorney Gregory Everman enclosing a copy of Wagner's '150 Patent with a demand that it be provided to the USPTO as "material" to the claims of Ashline's pending patent application. *See* Doc. No. 51-5. Significantly, the letter made no mention of any allegation that Wagner was a co-inventor or had any inventorship rights in Ashline's claimed invention notwithstanding Wagner's admitted knowledge of the pending patent applications, which she testified that she looked at "to see if the shoulder portions were taken from me." See Doc. No. 51-

5

3 at 133. In response to the letter, Mr. Everman, who testified that he was unaware of Wagner's Vest or the '150 Patent prior to Mr. Tuccillo's letter, sent the '150 Patent to the patent examiner. *See* Doc. No. 88-1 at ¶ 8. The USPTO never cited the '150 Patent in a rejection of Ashline's '532 patent application. *Id*.

Wagner filed this action in August 2018 seeking an order naming her as a co-inventor of the '074 Patent pursuant to 35 U.S.C. § 256 and asserting claims under North Carolina state law for unjust enrichment, fraud and imposition of a constructive trust. She claims that she contributed to the conception of at least one claim of the '074 Patent, specifically the claim language "a member having shoulder portions at least partially positionable on top of at least a portion the shoulders of the driver," which appears in Claim 1 of the '074 Patent. She argues that her insights and Vest "epaulettes" were the motivation for the "shoulder portions" which are claimed in the '074 Patent and that Ashline had no knowledge of using shoulder portions over/on top of shoulders to maintain proper seatbelt position during crash impact until such concept was conveyed to him by Wagner.

Plaintiff ultimately filed an Amended Complaint, which Defendants moved to dismiss. *See* Doc. Nos. 25, 26. The Court denied that motion in January 2020, but in doing so gave Wagner clear notice of the "heavy burden" that she would need to carry to satisfy the governing standard to be added as a co-inventor of the '074 Patent. *See* Doc. No. 34 at 5 n. 2. After a full period of discovery, which was extended by the stipulation of the parties (Doc. No. 49), Defendants filed their Motion for Summary Judgment. Following the close of briefing on the motion for summary judgment, Plaintiff filed a motion for leave to depose Ashline's patent prosecution counsel
6

Everman or alternatively strike his declaration filed as an exhibit to Defendants' summary judgment reply brief. All pending motions are now ripe for the Court's decision.[1]

### III. DISCUSSION

A. <u>Claim of Joint Patent Inventorship under 35 U.S.C. § 256</u>

Because patents have a presumption of validity, *see* 35 U.S.C. § 282, the inventorship stated in an issued patent is presumed to be correct. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). However, Section 256 of Title 35 of the United States Code "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). As relevant here, Section 256 addresses "nonjoinder" – "the error of omitting an inventor" from a patent. *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019).

As the Court has previously explained, who qualifies as a "joint inventor" is described in Section 116 of Title 35. *See Eli Lilly & Co. v. Aradigm Corp.,* 376 F.3d 1352, 1359 (Fed. Cir. 2004); Doc. No. 34. Section 116 provides that a person not listed on a patent need not demonstrate that she made a contribution equal in importance to the contribution made by the listed inventors to claim his right to joint inventor status. *See* 35 U.S.C. § 116 (2000) ("Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to

---

[1] In a footnote in her response to the motion for summary judgment, Plaintiff (belatedly) requested that the Court hold a Markman hearing on the construction of the claim language cited above. Although the Court declined to hold a separate claim construction hearing prior to the hearing on summary judgment, the Court permitted the parties to file written arguments on claim construction and provide oral argument on the issue during the hearing on the pending motions. *See* Doc. No. 90.

7

the subject matter of every claim of the patent."). Also, Section 116 "sets no explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor." *Fina Oil*, 123 F.3d at 1473.

However, because "'[c]onception is the touchstone of inventorship'... a joint inventor must contribute to the invention's conception." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed.Cir.1994); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). A joint inventor must (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998); *Fina Oil*, 123 F.3d at 1473 ("The case law thus indicates that to be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.").

There must also be "some quantum of collaboration" between the joint inventors. *Eli Lilly*, 376 F.3d at 1359 (noting that "the alleged joint inventor seeking to be listed on a patent must demonstrate that his labors were conjoined with the efforts of the named inventors"). "For persons to be joint inventors ... there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co., Inc.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts." *Id*.

8

Thus, joint inventorship occurs when more than one person contributes to the conception of the invention. Yet, it is frequently difficult to determine who has in fact contributed to the conception of a given invention because the contribution must consist of more than suggesting a desired result or following the instructions of another. Indeed, the concept of joint invention has been described by one court as "one of the muddiest concepts in the muddy metaphysics of the patent law." *Mueller Brass Co. v. Reading Indus.*, 352 F. Supp. 1357, 1372 (E.D. Pa. 1972), *aff'd,* 487 F.2d 1395 (3d Cir. 1973). Nevertheless, the Federal Circuit has stated that "[d]etermining 'inventorship' is nothing more than determining who conceived the subject matter at issue, whether that subject matter is recited in a claim in an application or in a count in an interference." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994).

Although the amount of "inventive contribution" need only be "not insignificant" relative to the full scope of the patent, alleged joint inventors must make a substantial showing to succeed on their claims. "[A] party alleging ... non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly*, 376 F.3d at 1358. Further, a plaintiff's testimony regarding his or her own inventorship claim "is regarded with skepticism," *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993), and "cannot, standing alone, rise to the level of clear and convincing proof." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).[2] Thus, a plaintiff "must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly*, 376 F.3d at 1358. "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may

---

[2] Whether the inventor's testimony has been sufficiently corroborated is evaluated under a "rule of reason" analysis, where "an evaluation of all pertinent evidence must be made so that a sound determination of the credibility" of the putative inventor's story may be reached. *See Carter v. Ozoeneh*, 717 F. Supp. 2d 507, 513 (W.D.N.C. 2010) (citing *Trovan v. Sokymat*, 299 F.3d 1292, 1302 (Fed. Cir. 2002)).

9

corroborate" a plaintiff's testimony. *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005). Summary judgment may be granted where there is insufficient evidence to corroborate a plaintiff's claim of co-inventorship. *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1377-78 (Fed. Cir. 2006) (affirming summary judgment where trial court determined that plaintiff failed to present clear and convincing evidence of inventorship).

As explained above, Wagner contends she is a joint inventor of the '074 Patent based on her alleged contributions to the conception of the portion of claim 1 that requires "a member having shoulder portions at least partially positionable on top of at least a portion [of] the shoulders of the driver." *See* Claims 1, 3, 17, 18 of the '074 Patent. In her response brief, Wagner describes her contribution in at least two (perhaps at least partially inconsistent) ways. At one point, she says that she contributed the element of "shoulder portions" in this claim language, *see* Doc. No. 55 at 11, but in another part she says that her "insight was <u>not</u> that there should be some sort of shoulder restraint, but rather, how that shoulder restraint should function during a crash, and how to make it work with the HNR device to stay in the safest, most effective position on the shoulder." *Id.* at 5 (emphasis in original).

The first, most fundamental, question with respect to Wagner's claim that she conceived of a portion of the claims of the '074 Patent is whether her "insight" that "the shoulder restraint must stay in place <u>on top of the shoulder</u>," *id.* (emphasis in original), is found in the relevant claim language. If it is not, then whatever the nature and scope of her contribution to Ashline's inventive process might have been it did not become part of the claims of the '074 Patent and she cannot be a co-inventor on the patent. The Court finds that the plain and ordinary meaning[3] of "a member

---

[3] In her "claim construction" brief to the court, Plaintiff proposed that this term should be construed as "[a] member having shoulder portions at least partially positionable on top of at least a portion

10

having shoulder portions at least partially positionable on top of at least a portion the shoulders of the driver" is that there must be a "member," it must have "shoulder portions," and those shoulder portions must be, at least in part, located on a portion of the shoulders of a driver when the support member is worn. Thus, independent claims 1 and 11 do not require that the shoulder portions must go over the top of the shoulder, but instead the shoulder portions need only be on "a portion [of] the shoulders."

Nevertheless, Wagner argues that the patent includes a preferred embodiment in which the shoulder portions "are positioned on top of the trapezius muscles" (i.e. the top of the shoulder), *see* Doc. 1-1 at col. 8, line 18-19. However, earlier in the very same paragraph of the specification, it makes clear that the claims do *not* require the shoulder portions to be fixed in that location; rather, the patent lists no fewer than four places where the "shoulder portions" may be located. *Id*. at line 6-10 ("It is to be understood that the shoulder portions may have various configurations including extending: rearward of the back portion **14**, over the shoulder, forward of the shoulder and/or over the shoulder and downward over the upper torso of the driver.") In any event, it is axiomatic in patent law that it is improper to read limitations from the specification into the claims, particularly where the specification itself explicitly states that the proffered limitation is only one of several options in interpreting the claim language. *See Phillips v. AWH Corp.*, 415 F.3d 1303,

---

of the shoulders of the driver *to anchor or restrain the shoulder belts in a position on top of the shoulder during and after a vehicle impact.*" (emphasis in original). Defendant in turn proposed a "plain language" construction of the claim. The Court finds that Plaintiff's proposed construction reflects a construction that is consistent only with a particular embodiment of the invention reflected in the specification and it would be error to read limitations from the specification into the claim language. *See Comark Communs., Inc. v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1320, 1323–24 (Fed. Cir. 2005) ("reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law"). If, as in this case, the plain and ordinary language of the claim is clear then the Court should use that meaning.

11

1320 (Fed. Cir. 2005) (en banc). Finally on this issue, even if the relevant claim language could somehow be read to include Wagner's "insight" with regard to the location of the shoulder portions, there is no language in the patent claims or specifications which reflects or discusses the need to avoid seat belt displacement, which Wagner urges to be the supposed benefit of her "insight." Therefore, Wagner's alleged contribution to the '074 Patent of the need to have the shoulder portions located *only* "on top of the shoulder" – as she has defined her inventive "insight" – is simply not found in the claims of the patent, which means she cannot be found to be a co-inventor in this action.

Beyond the absence of Wagner's claimed inventive contribution from the patent claims (which is alone a proper ground for summary judgment), Wagner has failed to present evidence that sufficiently corroborates her own testimony that Ashline used her "insight" in his invention that became the '074 Patent. Wagner alleges that the following evidence corroborates her testimony – 1) the testimony of Arthur Cooksey, a publishing/marketing specialist who was present at an October 2005 meeting with Wagner and Ashline, 2) various "contemporaneous" documents including marketing materials and Ashline's patent application and 3) "other circumstantial evidence." *See* Doc. 55 at 2.

Wagner exaggerates the impact of Mr. Cooksey's testimony, which corroborates only a part of Wagner's testimony that Defendant does not dispute and does nothing to provide evidence that Wagner contributed to Ashline's invention. Cooksey, who was deposed in September 2020 and acknowledged that "I don't recall a whole lot," testified that he recalled only one meeting between Wagner and Ashline. Doc. No. 58 at 22, 26, 75.[4] According to Cooksey, the meeting

---

[4] Page number references to Mr. Cooksey's deposition refer to the deposition transcript rather than the docket page number.

"really focused on [Wagner's] vest and the follow-up series of books and the NASCAR patches came into play somewhere along that line." *Id*. at 22. Thus, Cooksey's testimony that Wagner and Ashline appeared to be working together and "seemed like they had a long ongoing conversation before me" clearly and specifically related only to Ashline's assistance to Wagner on her product. *See Id*. at 22-24; *see also id*. at 66-67 ("the whole reason we were there was – I guess it was the vest, the books, kind of a package… [Ashline] would be a great spokesperson for safety, brain injury type of things. So, I think that's what the overall conversation was about.").

Defendants do not dispute that Ashline met with and assisted Wagner with her Vest and discussed her safety books and other projects. And, Cooksey confirms that admission with his testimony. However, the evidence that Ashline assisted Wagner simply does not corroborate Wagner's testimony that she assisted Ashline. Rather, while certainly not impossible, it is a substantial leap from Ashline, an acknowledged expert in the field, helping Wagner with a child safety vest and other ventures to Wagner in turn providing a "not insignificant" contribution to his invention. Again, mere possibility or even a clear "opportunity"[5] as argued by Wagner is not sufficient to create a triable issue on whether Wagner has established "clear and convincing" evidence that she is a co-inventor of the '074 Patent. In sum, no reasonable finder of fact could conclude that Cooksey's testimony corroborates Wagner's claims.

The various "contemporaneous" documents and "other circumstances" offered by Wagner such as marketing materials, Ashline's prior patents or the subject patent's application also fail to corroborate her testimony of participation in the conception of the invention. At most, those

---

[5] An opportunity to make an inventive contribution alone cannot create more than speculation of co-inventorship. If it did, then there would inevitably be sufficient corroboration of co-inventorship in nearly every case in which the alleged co-inventor is not a stranger to the inventor.

documents suggest that Ashline continued to refine his inventions and sought to design head and neck restraints that were different (enough) from his own inventions and the inventions of others so that his new invention could be patented – a task at which the USPTO determined that he had succeeded by the issuance of the '074 Patent. Also, contrary to Wagner's arguments, these documents do not undermine the clear evidence that the use of "shoulder portions" (whether they were specifically called by that generic name or not) were well known in the industry and to Ashline[6] prior to his having any communication with Wagner. Even more significantly, Wagner's alleged corroboration does not address Defendants' undisputed evidence that – well before he met Wagner – Ashline produced early prototypes of the '074 Patent invention with shoulder portions positioned on the shoulders. *See* Doc. No. 51-1 at 9-13.

Accordingly, Wagner has failed to present evidence that corroborates her testimony that she is entitled to be listed as a co-inventor of the '074 Patent. The Court properly accepted Wagner's allegations as true for purposes of ruling on the motion to dismiss but cannot do so again at summary judgment. Thus, the Court will grant summary judgment to Defendants on Wagner's federal claim under Section 256.

B. Plaintiff's State Law Claims

In addition to her claim that she be found to be a joint inventor of the '074 Patent, Plaintiff asserts related state law claims for unjust enrichment, fraud and constructive trust. These claims all rest on Plaintiff's foundational claim that she is a co-inventor of the invention reflected in the

---

[6] At oral argument, Wagner's counsel acknowledged that the earlier "HANS" devices, of which Ashline was indisputably aware, had "shoulder portions" that were placed on top of the shoulders but sought to distinguish those devices because the "shoulder portions" sloped downward. This distinction does not, however, alter Ashline's prior knowledge of "shoulder portions" being used in head and neck restraints prior to meeting Wagner.

14

'074 Patent. Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim of co-inventorship they are similarly entitled to summary judgment on her dependent state law claims.[7]

Moreover, Plaintiff's North Carolina state law claims are barred by the statute of limitations. Claims for unjust enrichment, fraud and constructive trust / fraud based on the alleged breach of a confidential relationship are subject to a three-year statute of limitations. N.C. Gen. Stat. § 1–52 (1), (5), (9) (2015); *see also Martin Marietta Materials, Inc. v. Bondhu, LLC*, 241 N.C. App. 81, 84 (2015); *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp. 3d 609, 626 (W.D.N.C. 2014); *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 333 n.5 (2015); *Long Bros. of Summerfield, Inc. v. Hilco Transp., Inc.*, 268 N.C. App. 377, 835 S.E.2d 864, 871 (2019). Generally, "a cause of action accrues as soon as the plaintiff has the right to sue." *Stratton*, 211 N.C. App. at 86; *Mountain Land Properties, Inc.*, 46 F. Supp. 3d at 625–26. Said another way, the claim accrues "when the wrong is complete and, thus, a plaintiff is entitled to assert the claim in court." *Mountain Land Properties, Inc.*, 46 F. Supp. 3d at 626; *Housecalls Home Health Care, Inc.*, 200 N.C. App. at 70.

Although actual knowledge of the harm is not required, "the cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Housecalls Home Health Care, Inc.*, 200 N.C. App. at 70 (citing *Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 478 (2005), *aff'd,* 361 N.C. 137 (2006)). For claims of fraud, "the statute of limitations begins to run from the discovery of the fraud or from the time it should

---

[7] At oral argument, Wagner's counsel conceded that if the Court found that Wagner's co-inventorship claims failed then her state law claims would necessarily fail as well.

have been discovered in the exercise of reasonable diligence." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477 (2004) (citing *Calhoun v. Calhoun*, 18 N.C. App. 429, 432 (1973)).

At the latest, the alleged fraud and "harm" to Plaintiff was complete by the date that the '074 patent issued (September 25, 2012). As discussed above, the undisputed evidence shows that no later than 2010 Wagner was aware of the '532 application which became the '074 Patent, reviewed the substance of the '532 application, was concerned that Ashline had used her idea for "shoulder portions" and consulted a lawyer about the situation. *See* Doc. No. 51-3 at pp. 133-137.[8] Her lawyer then demanded that Ashline submit the Wagner patent to the USPTO in connection with the '532 application, which was done. Thereafter, the '074 Patent publicly issued.

Accordingly, by the time the '074 Patent issued in 2012, Wagner had for at least two years known that Ashline was seeking a patent on their alleged joint invention and engaged a lawyer who took action in response (although he did not claim that Wagner was a co-inventor at the time). With all her stated concerns about Ashline's use of "shoulder portions," her knowledge of Ashline's patent applications and the assistance of legal counsel, even assuming that Wagner did not have actual knowledge that Ashline had claimed her alleged ideas in the '074 Patent,[9] she certainly "should have" discovered the alleged "fraud" (and the basis for her alleged claim of unjust enrichment and constructive trust) well outside the three year period of limitations, which

---

[8] Indeed, Wagner also testified that she told Ashline's wife that their device "better not have shoulder portions" four years earlier in March 2006. *See* Doc. No. 51-3 at 141.

[9] Wagner's counsel argued at oral argument that she did not have a clear understanding of the scope of co-inventorship and sought legal counsel just to make sure that she could sell her own vest invention. While this argument rings hollow because, among other reasons, Wagner was herself a co-inventor on her own vest patent so she presumably understood the nature of co-inventorship, the Court need not determine that Wagner had actual knowledge of the patent or her co-inventorship claims. Instead, the Court need only find as it does above that Wagner "should have known" about the issuance of the patent within a reasonable time of its issuance in 2012 and thus her state law claims filed over six years later are untimely.

16

now bars her state law claims. *See James v. J2 Cloud Servs., LLC*, 823 F. App'x 945, 951 (Fed. Cir. 2020) (affirming District Court's grant of summary judgment against plaintiff on inventorship related state law claims of unjust enrichment and fraud where plaintiff "was on notice that the defendants had a patent application that likely would issue and a reasonable person would have conducted a search for the issued patent.").

### C. Plaintiff's Motion to Depose Gregory Everman

In determining that Defendants are entitled to summary judgment, the Court has not considered the portions of Mr. Everman's affidavit to which Plaintiff objects and for which she seeks to depose him. Therefore, in light of the Court's resolution of the motion for summary judgment, Plaintiff's motion to depose Mr. Everman is moot and will be dismissed on that ground.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 51) is **GRANTED and Summary Judgment is awarded to Defendants on all of Plaintiff's claims;**
2. Plaintiff's Motion for Leave to Depose Gregory Everman is **DENIED** as moot; and
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 5, 2021

Kenneth D. Bell
United States District Judge