IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Civil Action No. 5:18-CV-123-KDB-DCK

| | |
|---|---|
| JULIE WAGNER,<br><br>        Plaintiff,<br><br>  v.<br><br>TREVOR ASHLINE and<br>SIMPSON PERFORMANCE<br>PRODUCTS, INC.,<br><br>        Defendants. | **SIMPSON'S MEMORANDUM IN SUPPORT OF ITS REFILED MOTION FOR ATTORNEYS' FEES** |

  Plaintiff wanted a jury to determine by clear and convincing evidence that Trevor Ashline, an acknowledged expert on seat belts and other automotive restraints, did not realize that seat belt displacement during a crash should be avoided. On its face, this seems implausible. When considered in light of the actual evidence, however, Plaintiff's case was demonstrated to be meritless.

  As will be described more fully below, Defendants' counsel demanded multiple times between filing and judgment that Plaintiff drop the case. Plaintiff doggedly refused. In the end, the Court granted summary judgment in favor of the Defendants for essentially the same reasons cited by Defendants in their various demands to the Plaintiff. Therefore, pursuant to 35 U.S.C. § 285 and for the reasons stated below, Simpson seeks recovery of reasonable attorneys' fees of

1

$292,340.00, an amount comprised by 798.5 hours billed by Nelson Mullins Riley & Scarborough LLP.[1]

## I. STATEMENT OF FACTS

### A. The Court's Summary Judgment Order

On February 5, 2021, the Court granted Defendants' Motion for Summary Judgment regarding all of Plaintiff's claims. The Court determined:

- "Wagner's alleged contribution to the '074 Patent of the need to have the shoulder portions located *only* 'on top of the shoulder' -- as she has defined her inventive 'insight' -- is simply not found in the claims of the patent, which means she cannot be found to be a co-inventor in this action." Doc. 100, page 12.

- "Beyond the absence of Wagner's claimed inventive contribution from the patent claims (which is alone a proper ground for summary judgment), Wagner has failed to present evidence that sufficiently corroborates her own testimony that Ashline used her 'insight' in his invention that became the '074 Patent." *Id.*

- ". . , Wagner's alleged corroboration does not address Defendants' undisputed evidence that -- well before he met Wagner -- Ashline produced early prototypes of the '074 Patent invention with shoulder portions positioned on the shoulders." *Id.* at page 14.

- The prior HANS device, as acknowledged by Plaintiff's counsel, had "shoulder portions" on top of the shoulders and this was known to Mr. Ashline "prior to meeting Wagner." *Id*. at page 14 n. 6.

---

[1] Simpson paid all of the defense costs in this case. The present motion is made with some reluctance because Simpson has no interest in "punishing" an individual plaintiff such as Ms. Wagner. But, much of the expense incurred by the defense could have been avoided if Plaintiff had not pressed unreasonable and objectively baseless positions. In addition, Plaintiff testified that she was paying her own lawyers in this case. Wagner Dep., page 97, lines 18-20 (Doc. No. 56). Therefore, Simpson believes that an award of its fees is appropriate.

- The various state law claims "all rest on Plaintiff's foundational claim that she is a co-inventor of the invention reflected in the '074 Patent. Because the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim of co-inventorship they are similarly entitled to summary judgment on her dependent state law claims." *Id*. at pages 14-15.

- "Moreover, Plaintiff's North Carolina state law claims are barred by the statute of limitations." *Id*. at page 15.

B. **Defendants' Attempts to Have Plaintiff Drop the Case**

Defendants' counsel repeatedly attempted to get Plaintiff to drop her case for essentially the same reasons on which the Court ultimately granted summary judgment. For example:

- An email from Defendants' counsel dated September 19, 2018 (Exhibit A) explained that the "shoulder portions" feature was present in the HANS device, as well as Mr. Ashline's previous U.S. Pat. No. 6,931,669.

- The undersigned became aware of the August 12, 2010 letter from Plaintiff's lawyer Nicholas Tuccillo to Gregory Everman (Doc. 51-5) on May 29, 2020 as a result of efforts to respond to Plaintiff's discovery requests.[2] Specifically, in responding to Plaintiff's discovery requests, Mr. Everman was asked to search his files for relevant documents. He found the letter and sent it to the undersigned on that date. As the Court is aware, that letter revealed clearly that Plaintiff was aware of the '532 Application (i.e., the application that became the '074 Patent) while it was pending. On June 3, 2020, Defendants' counsel again requested that the case be dismissed (Exhibit B). In response,

---

[2] This letter was obviously highly relevant to the statute of limitations defense of the state law claims. Because it failed to mention any claim of alleged co-inventorship, it was also relevant to Plaintiff's allegation first made years later that she was a co-inventor of the '074 Patent.

3

Plaintiff's counsel stated, "We see no basis for your demand." *See* email of June 4, 2020 from Kevin Grogan to Craig Killen (Exhibit C, page 10).

- Defendants' counsel had not been able to locate the Tuccillo letter in Plaintiff's production of documents and therefore asked if it had been produced. The response was "there is no need or obligation under the federal [*sic*] to produce a document already in the possession of the party making the request." Exhibit C, page 9. Of course, until the letter was found by Mr. Everman and sent by Defendants' counsel to Plaintiff's counsel, Plaintiff had no way of knowing for sure whether either Defendant had any recollection of the letter or still had a copy.

- On June 15, 2020, Defendants' counsel sent Plaintiff's counsel a photograph of a November 20, 2002 prototype head and neck restraint developed by Mr. Ashline that had shoulder portions as claimed in the '074 Patent. *See* Exhibit C, page 7. Rather than addressing the significance of the prototype as a factual matter, Plaintiff's counsel responded largely with argument. *See* Emails between counsel dated June 30, 2020 and July 2, 2020 (Exhibit C).

- Finally, upon review of the Federal Circuit's recent slip opinion of *James v. J2 Cloud Services, LLC et al.*, No. 2019-2016 (July 28, 2020), Defendants' counsel again noted that the state law claims were clearly barred by the statute of limitations and requested dismissal of the case. Plaintiff again refused, stating that the *James* case, which is discussed on page 17 of the Court's Order granting summary judgment, "does not impact the plaintiff's case." Email dated July 31, 2020 (Exhibit D).

## II. ARGUMENT

### A. Recovery of Reasonable Attorneys' Fees Generally

35 U.S.C. § 285 of the Patent Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court has defined "exceptional" as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional is determined on a case-by-case basis by the district court that has discretion to make this decision considering the totality of the circumstances. *Id.*

When considering if a case is "exceptional" courts consider factors such as "frivolousness, motivation, objective unreasonableness of a case's factual or legal components, and the need in particular circumstances to advance considerations of compensation and deterrence." *Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322 (Fed. Cir. 2017) (citing *Octane Fitness, LLC*, 572 U.S. at 554 n. 6 (2014). Other factors include untenable positions, continued prosecution of a case in the face of testimony that lacked credibility and veracity, and vexatious conduct. *Falana v. Kent State Univ.*, No. 5:08 CV 720, 2010 WL 5178838, at *16 (N.D. Ohio Dec. 15, 2010), *aff'd in part,* 669 F.3d 1349 (Fed. Cir. 2012). A case presenting "subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness, LLC*, 572 U.S. at 555.

Prevailing on Summary Judgment is a factor that supports an award of attorneys' fees. *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (awarding

5

attorneys' fees after the moving party prevailed on summary judgment holding the plaintiff "(1) acted in bad faith in filing a baseless infringement action and continuing to pursue it despite no evidence of infringement; and (2) engaged in vexatious and unjustified litigation conduct that unnecessarily prolonged the proceedings and forced [defendant] to incur substantial expenses.").

### B. This is an Exceptional Case

This case stands apart from the crowd. The Court noted in denying Defendants' early motion to dismiss that Plaintiff would have a "heavy burden" in order to avoid summary judgment in the future. Doc. No. 34 at 5 n. 2. In the end, Plaintiff was unable to meet that burden in any respect. On the claim of co-inventorship, the Court determined that the patent itself did not reflect Plaintiff's alleged contribution. Even if it did, the Court determined that Plaintiff was unable to corroborate sufficiently her alleged contribution. The state law claims were admittedly not viable without a finding of co-inventorship, so they failed as well. In addition, the state law claims, which were brought nearly eight years after Plaintiff was aware of the '532 patent application, were all barred by the statute of limitations.

Defendants' efforts to have Plaintiff walk away from this case before much of the money was spent are also significant. These were not merely hollow demands to drop the case, they were coupled with detailed explanations of the facts and evidence that showed Plaintiff's case was not viable. *See* Exhibits A-D. These facts and evidence were essentially the same as those ultimately cited in Defendants' Motion for Summary Judgment and subsequently relied upon by the Court in granting that Motion.

Moreover, Plaintiff's failure to produce the August 2010 letter from Mr. Tuccillo is also questionable. Plaintiff's excuse was she had no obligation to produce a document already in Defendants' possession. But, Plaintiff did not know that at the time she withheld the document

6

Case 5:18-cv-00123-KDB-DCK   Document 108-1   Filed 02/24/21   Page 6 of 12

from production. It is fortuitous for the defense that Mr. Everman found it, but considering the long delay in filing suit there was no way for Plaintiff to know that it would be found. In any event, belief that a document is already in the opponent's possession does not relieve a party of its discovery obligations. *See Stout v. Wolff Shoe Co.*, No. 3:04 CV 23231 JFA, 2007 WL 1034998, at *2 (D.S.C. Mar. 31, 2007) ("Furthermore, the fact that the information sought might already be in the possession of the requesting party or obtainable from another source is not a bar to discovery of relevant information."); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) ("[Defendant] is required to produce documents he has in his possession, custody or control, regardless of whether he believes plaintiff already has those documents.").

In addition, Plaintiff never articulated a substantial basis of asserting the fraud claims against Simpson based on any actual conduct by Simpson. The arguments against Simpson relied on in opposing summary judgment was simply that Simpson was vicariously liable because it hired Ashline after his interactions with Ms. Wagner and that Ashline and Simpson shared an attorney (Gregory Everman).

Simpson respectfully submits that this case is an "exceptional case" under the applicable standards and that an award of fees is appropriate.

### C. Defendants' Attorneys' Fees are Reasonable

The attorney fees incurred in connection with the defense of the claims are reasonable considering the skills of the lawyers, the nature of Plaintiff's claims, and the ultimate outcome. The determination of reasonable attorneys' fees is "'a matter that is committed to the sound discretion' of a district court judge." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010)).

District courts usually apply the lodestar method "which provides a presumptively reasonable fee amount." *Lumen View Technology LLC*, 811 F.3d. at 483.

Attorneys' fees are calculated under the lodestar method by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 660 F. App'x 966, 972 (Fed. Cir. 2016) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). In determining reasonable fees, the court is required to consider "all the relevant circumstances in a particular case." *Junker v. Eddings*, 396 F.3d 1359, 1365 (Fed. Cir. 2005). Examples of factors considered include the prevailing market rate and the "attorneys' comparable skill, experience, and reputation." *Large Audience Display Systems*, 660 F. App'x at 972 (citing *Blum*, 465 U.S. at 888). "The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee v. Boczar,* 738 F.3d 81, 88–89 (4th Cir. 2013).

Exhibit E sets forth the reasonable fees incurred in this matter. In carefully reviewing counsel's billing records, Defendants' counsel has removed and/or reduced any time entries as appropriate for this motion. S*ee Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The applicant should exercise 'billing judgment' with respect to hours worked.").

Factors supporting the reasonableness of the requested fees are discussed below.

### 1. The Results Obtained

In this case, the Defendants obtained Summary Judgment on all of Plaintiff's claims for multiple alternative reasons. This factor weighs heavily in favor of a finding that $292,340.00 in fees requested by Simpson (which, as noted above, paid all the defense costs) is reasonable.

### 2. The Novelty and Difficulty of the Case

Even in the world of patent litigation, co-inventorship cases are rare. Such cases therefore raise unusual questions that counsel must address. This case was pending over two years and proceeded through the extended period of discovery.

### 3. The Skill Required to Properly Perform the Legal Services Rendered

Successful litigation on behalf of Defendants required experience and familiarity with the Patent Statute and its applicable case law, as well as North Carolina law. Familiarity with the engineering and science of vehicle safety restraints was also required. Exhibit E details the experience of Defendants' counsel.

### 4. The Customary Fee for Like Work

The hourly rates set forth in Exhibit E are the ordinary and customary rates that Nelson Mullins charges Simpson in its patent litigation matters. By selecting Nelson Mullins as counsel in this matter and paying Nelson Mullins' invoices, Simpson has determined the Nelson Mullins' fees are reasonable. *See, e.g., Cargill, Inc. v. WDS, Inc.*, No. 1:16-cv-00848, 2018 WL 1525352, at *18 (W.D.N.C. Mar. 28, 2018) ("Counsel's fees were agreed to, billed, and paid by [the party]."); *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005) ("Imgarten paid his legal fees and expenses as they accrued. His attorneys' bills are not, therefore, abstract invoices that have piled up, unpaid, year after year. The invoices submitted by Imgartens' attorneys represent marketplace billing decisions, and Imgarten, by paying them, has attested to their reasonableness.").

The rates charged by Defendants' counsel were well within, if not below, the range typically charged for complex litigation in North Carolina. *See, e.g., LendingTree, LLC v. Zillow, Inc.*, No. 310CV00439FDWDCK, 2014 WL 12738633, at *5 (W.D.N.C. Dec. 8, 2014)

9

(approving fees based on requested hourly rates from 2014 which were "not substantially higher" than $750/hour); *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 315CV00584FDWDSC, 2017 WL 6001637, at *20 (W.D.N.C. Dec. 4, 2017) (approving fees billed at rate of $445/hour).Attached at Exhibit F is a declaration from Lance Lawson, a Charlotte lawyer familiar with the skill of Defendants' counsel and more generally with the fees charged for intellectual property litigation in Charlotte. *See McAfee*, 738 F.3d at 91 ("The evidence we have deemed competent to show prevailing market rates includes 'affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.'") (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).). This declaration indicates that the rates charged by Nelson Mullins in this case are reasonable.

The amount sought is consistent with patent-related cases of similar scope and complexity. For example, the 2019 Report of the Economic Survey published by the American Intellectual Property Association ("AIPLA") indicates that the mean cost of patent infringement litigation in the "Metro Southeast" geographic location, with less than one million dollars at risk is $367,000 through the phase of "discovery, motions and claim construction." Exhibit E, ¶ 10 (citing Page I-141). In cases with one to ten million dollars at risk, the mean cost rises to $690,000 through the same phase. *Id*. (citing Page I-142). When these cases are handled by firms such as Nelson Mullins having 60 or more attorneys, the mean litigation cost is $423,000 for cases with less than one million dollars at risk (page I-147) and $1,329,000 for cases with one to ten million dollars at risk (page I-148), also through "discovery, motions and claim construction." *Id*. While patent infringement litigation and inventorship litigation are, of course, not exactly the same, they are comparable and involve many of the same issues.

## III. CONCLUSION

For the above reasons, Simpson respectfully requests the Court to find that this is an exceptional case under the Patent Act and award its reasonable attorneys' fees totaling $292,340.00.

Dated: February 24, 2021

Respectfully submitted,

By: /s/Craig N. Killen
    Craig N. Killen
    N.C. State Bar No. 43980
    Email: craig.killen@nelsonmullins.com
    Lauren G. Hunstad
    N.C. State Bar No. 52210
    Email: lauren.hunstad@nelsonmullins.com
    Nelson Mullins Riley & Scarborough LLP
    301 South College Street, 23rd Floor
    Charlotte, North Carolina 28202
    Telephone: (704) 417-3127
    Facsimile: (803) 255-9831

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing has been sent to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system

This, the 24th day of February, 2021.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/Craig N. Killen
  Craig N. Killen

*Attorney for Defendants*